.IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES NJAU,

    *Plaintiff,*

    v.

HARFORD COUNTY,

    *Defendant.*

Civil Action No.: ELH-15-00049

**MEMORANDUM**

Charles Njau, the self-represented plaintiff, has filed his third law suit challenging the real property tax assessment imposed in connection with an unimproved parcel of land that he owns in Harford County, Maryland. ECF 1. In this case, Njau has sued Harford County (the "County"), alleging discrimination under "Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq.* (the 'Fair Housing Act' or 'FHA')." ECF 1. Pursuant to 42 U.S.C. § 1983, Njau also alleges a violation of his rights under the 14th Amendment to the United States Constitution. In addition, plaintiff asserts a violation of his rights under Article 15 of the Maryland Constitution and violations of the "Civil Rights Act of 1866 and 1968." *Id.*

Plaintiff, who "is an African-American immigrant" and resident of Baltimore City (ECF 1, ¶ 13), purchased the parcel at issue in July 2007, for the sum of $20,000 (the "Property"). ECF 1, ¶¶ 1, 5, 11; ECF 12-4. The Property, described in the deed recorded in the Land Records of Harford County in Liber 7440, Folio 438, is approximately 11,000 square feet in size. ECF 1 ¶¶ 1, 6. According to plaintiff, his "property is the only property in the whole of Harford County under 11,000 square feet unimproved with no water or sewer lines that has been assessed [at] $98,000 or 490% more than the purchased value of $20,000 in the worst economic recession of our lifetime." ECF 1, ¶ 1.

Moreover, Njau complains that his property tax of $1,132 represents "a 226% tax increase from $500 [in property taxes] during the worst economic recession in our lifetime." ECF 1, ¶ 2. According to Njau, he is assessed a "property tax burden that is so grossly disproportionate in favoring all similar residential properties, except for Plaintiff's property . . . ." *Id.* ¶ 15. In his view, "the County's property tax scheme . . . has an actual, significant, disproportionate and discriminatory effect upon the Plaintiff as an African-American and an immigrant . . . ." *Id.* ¶ 16.

The County has filed a Motion for Summary Judgment (ECF 6), supported by a Memorandum of Law (ECF 6-1) (collectively, the "Motion"), and several exhibits. Plaintiff opposes the Motion (ECF 7, "Opposition"). The County has replied (ECF 10, "Reply"), and has submitted an additional exhibit. Plaintiff subsequently filed a Motion For Leave To File A Surreply (ECF 12), along with three exhibits and the proposed Surreply. The County did not respond, and the time to do so has expired.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. I will grant plaintiff's Motion For Leave To File A Surreply. And, for the reasons set forth below, I shall grant the County's Motion.

## I.      Factual and Procedural Background

This case (the "Second Federal Action" or "Njau III") is related to a suit filed by plaintiff in May 2012 in the Circuit Court for Harford County (the "State Court Action" or "Njau I"), and to a case filed in federal court in September 2012, ELH-12-2660 (the "First Federal Action" or "Njau II").

In Njau I, plaintiff filed suit in the Circuit Court for Harford County against the Harford County Tax Assessments and Taxation Department (the "Department") and the Harford County

Property Tax Assessment Appeal Board (the "Appeals Board" or "PTAAB"), docketed as Case 12-C-12-001353. *See* ECF 6-4 (Complaint 12-C-12-1353).[1] There, Njau asserted a single count: "Discrimination In Tax Assessment." He recounted that he bought the Property in Harford County in 2007 for $20,000, and in 2009 the annual property taxes increased from $500 to $1,121.62, even though he made no improvements to the Property. *Id.* Then, in 2010, the taxes increased again, to $1,132. *Id.* at 2. According to Mr. Njau, the value of his unimproved lot in Harford County had been reassessed for tax purposes at a much higher level than that of other similarly situated unimproved properties. Among other things, Mr. Njau alleged then (as he does now) that his taxes "increased 226% . . . during the worst economic recession in our lifetime while similar properties have seen no increase." ECF 6-4 at 1-2. He maintained that the defendants engaged in a "crude method of residential segregation to force unwanted resident (Plaintiff) to sell and move," in violation of the "Civil Rights Act." *Id.* at 2.

On August 15, 2012, the Circuit Court for Harford County (Carr, J.) issued a Memorandum Opinion and Order dismissing the State Court Action. *See* ECF 5-3 and ECF 11-2 in Case ELH-12-2660. Notably, dismissal followed a hearing in court. *Id.* at 3.

The circuit court noted that, among other things, Mr. Njau never appealed his tax assessment to the Maryland Tax Court after the PTAAB upheld his assessment on October 18, 2011. ECF 5-3 at 1; ECF 11-2 at 1. The court reasoned that, "to the extent that the Plaintiff is seeking judicial review of the decision of the local Property Tax Assessment Appeals Board, this case should be dismissed for the failure of the Plaintiff to exhaust all of his administrative

---

[1] This Court may take judicial notice of court records. *Philips v. Pitts Co. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989), the Court said: "'[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" (Citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, 132 S. Ct. 115 (2011).

remedies[.]" *Id.* at 5. Further, the court noted that plaintiff claimed he was "a victim of discrimination. . . ." *Id.* at 3. But, it found that "absolutely no facts" were asserted in the complaint to permit an inference of discrimination. ECF 5-3 at 4; ECF 11-2 at 4. The court said that, "to the extent that the Plaintiff is filing a claim for a civil rights violation . . . , this case should be dismissed for: (a) the failure to state a cause of action; (b) the failure to name any defendant with the capacity to be sued." *Id.* According to the Maryland Judiciary's "Case Search" website (http://casesearch.courts.state.md.us/), Mr. Njau noted an appeal to the Maryland Court of Special Appeals on August 27, 2012. The "Case Search" docket also indicates that Mr. Njau's appeal was subsequently dismissed by Order of November 28, 2012.

In the interim, on September 6, 2012, Mr. Njau initiated Njau II in this Court. Njau's complaint in Njau II named the same defendants sued in Njau I, and was identical in every respect to the complaint that he had filed in the State Court Action. *See* ECF 1 in Case ELH-12-2660. The First Federal Action was assigned to me.

In Njau II, the Supervisor of Assessments for Harford County filed a "Motion to Dismiss or for Summary Judgment." ECF 5. The Appeals Board filed a similar motion. ECF 10. In sum, defendants asserted that Mr. Njau's claim was deficient on four grounds: (1) the claim against defendants was barred by State sovereign immunity under the Eleventh Amendment, because the Appeals Board and SDAT are State agencies; (2) suit was prohibited by the Tax Injunction Act of 1937, 28 U.S.C. § 1341; (3) suit was barred by the *Rooker-Feldman* doctrine; and (4) the complaint failed to state a claim upon which relief can be granted. Mr. Njau filed an opposition (ECF 13), along with multiple exhibits. One of plaintiff's many exhibits, ECF 13-14, reflected that plaintiff acquired the Property from James Angelucci in July 2007, for the sum of $20,000. In turn, Mr. Angelucci acquired the property on November 3, 2005, for $7,000. In

plaintiff's memorandum in opposition to the defendants' motion in Njau II (ECF 13-1), plaintiff asserted that the prior owner is "white and natural born [and] was never assessed 490% more or taxed 226% more." *Id.* at 2.

In Njau II, I construed the defendants' motion as a motion to dismiss and granted it on July 9, 2013. *See* ECF 15 (Memorandum); ECF 16 (Order). *See* ELH-12-2660, 2013 WL 3491142 (D. Md. July 9, 2013). As I explained, to the extent that Mr. Njau sought to have this Court review the ruling in the State Court Action, his case was barred by the *Rooker-Feldman* doctrine. Alternatively, I determined that the case was subject to dismissal on the basis of *res judicata*. Mr. Njau did not note an appeal to the Fourth Circuit. *See* Docket.

The *Rooker-Feldman* doctrine derives from two Supreme Court cases: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). In Njau II, I explained that the doctrine prohibits a federal district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015). In other words, the *Rooker-Feldman* doctrine precludes "lower federal courts . . . from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Thus, "the doctrine forbids claims that 'seek [ ] redress for an injury caused by the state-court decision itself' because they 'ask[ ] the federal district court to conduct an appellate review of the state-court decision.'" *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (quoting *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006)) (alterations in *Adkins*); *accord Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003). The doctrine derives from 28 U.S.C.

§ 1257, a federal statute that vests the United States Supreme Court with jurisdiction to hear appeals from state court decisions in cases raising questions of federal law. *See Adkins*, 464 F.3d at 463-64.

Ordinarily, a party to a state court proceeding is able to raise objections in the state proceeding on the basis of applicable federal law or federal constitutional provisions. "'Under our system of dual sovereignty, . . . state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Bullock v. Napolitano*, 666 F.3d 281, 285 (4th Cir. 2012) (quoting *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990)) (emphasis omitted). Moreover, Maryland law provides for appellate review, in Maryland State courts, of adverse decisions of a Maryland circuit court. *See* Md. Code (2013 Repl. Vol.), § 12-301 of the Courts & Judicial Proceedings Article. The *Rooker-Feldman* doctrine precludes a federal district court from short-circuiting that process and directly reviewing the judgment of a state court. *See Stillwell*, 336 F.3d at 319 ("[T]he *Rooker-Feldman* doctrine . . . preserves the independence of state courts as well as congressional intent that an appeal from a state court decision must proceed through that state's system of appellate review rather than inferior federal courts."). I reasoned in Njau II that, to the extent plaintiff sought to appeal in federal court the Maryland court's rejection of his claims, the *Rooker-Feldman* doctrine deprived this Court of jurisdiction to consider such a suit.

*Exxon-Mobil, supra*, 544 U.S. 280, confirms that the *Rooker-Feldman* doctrine bars federal actions "complaining of injuries *caused by state-court judgments*" themselves. *Id.* at 284 (emphasis added). But, it does not apply to federal actions that are merely parallel to concurrent state court actions, and which complain of the same alleged injuries that occurred outside of the judicial process. "When there is parallel state and federal litigation, *Rooker-Feldman* is not

triggered simply by the entry of judgment in state court." *Id.* at 292.

Thus, to the extent that plaintiff did not effectively seek appellate review of the decision in the State Court Action, but merely sought to assert in this Court the same or related claims as he asserted in the State court, I noted in Njau II that the *Rooker-Feldman* doctrine would not bar his suit. Nevertheless, the *Exxon-Mobil* Court made plain that, even where the *Rooker-Feldman* doctrine does not apply, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law," and that the "Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Id.* at 293 (citation omitted). Therefore, even if the *Rooker-Feldman* doctrine did not bar plaintiff's suit in Njau II, I concluded, in the alternative, that his suit was barred by the doctrine of *res judicata*.

On January 7, 2015, plaintiff filed the Second Federal Action (Njau III), based on the exact same factual assertions contained in the two prior suits outlined above. In particular, Njau III does not concern a new tax assessment. Like plaintiff's two earlier cases, this case concerns the property taxes levied in 2009 and 2010 on the 11,000 square foot unimproved parcel in Harford County, which plaintiff purchased in 2007 for $20,000. To plaintiff's dissatisfaction, his annual property taxes increased from $500 to $1,132.

In its Motion, the County makes several arguments. It asserts that the Complaint is barred by *res judicata*; the suit violates the Tax Injunction Act, which, according to the County, "prohibits a federal court from adjudicating a challenge to the collection of a state tax"; it fails to state a claim under 42 U.S.C. § 3604(a) of the Fair Housing Act, because the County did not rent, lease, or offer property for sale to plaintiff; it fails to state a claim for relief "under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment," because the County's "real property

tax rate is uniform and was applied to Plaintiff in the same way as to every other property owner in compliance with the due process and equal protection clauses"; it fails to state a claim under the Maryland Constitution, "because the County has a uniform property tax for all land" within its boundaries; and the suit fails to state a claim for relief under the Civil Rights Act of 1886 and 1968. ECF 6 at 1-2.

Although there is merit to several contentions advanced by the County, I need not address all of them. I conclude that the case is barred by principles of *res judicata*.

## II. Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a). It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). However, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Of import here, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Indeed, in the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. Put another way, it is not the province of the court to resolve factual disputes.

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Anderson*, 477 U.S. at 248. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a

matter of law." *Id.* at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

### III. Overview — Property Taxes in Maryland

Title 2 of the Tax-Property Article ("T.P.") of the Maryland Code (2012 Repl. Vol., 2015 Supp.) is relevant here. It expressly establishes the State Department of Assessments and Taxation ("SDAT") as a department of the State government (T.P. § 2-101), headed by the Director of Assessments and Taxation, who is appointed by the Governor. T.P. § 2-102. In turn, the Director designates a "State Supervisor of Assessments" as well as "area supervisors." T.P. § 2-104. The State Supervisor of Assessments is a State employee. T.P. § 2-105. Each county and Baltimore City has its own area supervisor. T.P. § 2-105.[2] In addition, SDAT employs "professional assessors . . . ." T.P. § 2-107.

As the County observes, without contradiction, property within the State of Maryland is subject to assessment and taxation, except as otherwise provided by law. T.P. § 6-101. Both the State and individual counties within the State may impose property tax on real property. T.P. §§ 6-201, 6-202. The Director has the power and duty "to direct that [SDAT] assess all property that is subject to assessment. . . ." And, property that is subject to assessment is reviewed at least once every three years. T.P. § 2-203(a).

For the State, the tax rate is set annually by the Board of Public Works. T.P. § 6-301. In order for a county to collect real property taxes, a local property tax rate must be adopted (T.P. §§ 6-301, 6-302), and the tax rate must be a "single rate," *i.e.*, uniform, with exceptions not

---

[2] In this Memorandum, any general statutory reference to "county" includes Baltimore City.

applicable here. T.P. § 6-302(b). The assessment of residential real property is performed "by the supervisor for the county where the property is located." T.P. § 8-202; *see also* T.P. § 2-105. Again, the supervisors are employees of SDAT.

The State has empowered each county, through its designated "collector," to collect both the State and the county property taxes due for each property listed on the tax rolls. T.P. § 4-201. The "collector" is defined as "an officer of a county or municipal corporation who has a duty to collect or remit taxes." T.P. § 1-101(e). In Harford County, the "collector" is the Treasurer, Robert F. Sandlass, Jr. *See* ECF 6-2, Affidavit of Robert F. Sandlass, Sr. ("Sandlass Affidavit"), ¶ 2.

The SDAT provides each county with an annual levy listing every property in the county that is not exempt from property taxation, along with its assessment, the State property tax due on the property, and any State tax credits that are applicable. ECF 6-2, ¶ 5, Sandlass Affidavit. The County generates the County's tax bill for each property by taking the State-developed assessment and applying the County's legislatively enacted property tax rate to determine the County property tax that is owed. *Id.* ¶¶ 5-6.

The total real property tax due includes State property tax as well as County property tax. ECF 6-2, ¶¶ 5-6. Of import here, the County's portion of the real property tax is calculated simply by multiplying the assessment for a particular property, as determined by SDAT, by the County's legislated property tax rate. The County "has no role in determining the assessed value of properties within its boundaries. . . ." *Id.* ¶ 3. Rather, that is the function of SDAT. *Id.* ¶¶ 3, 5; *see also* T.P. § 2-202. Thus, the amount of County tax is effectively controlled by the value assigned by SDAT to the particular property.

The Harford County tax year runs from July 1 to June 30, and the tax rate is adopted via Resolution of the Harford County Council. The tax rate for real property in Harford County, outside of an incorporated city or town,[3] is uniform for all properties, although the rate is subject to change. *See* ECF 6-1 at 3, 14; *see also* ECF 6-3 at 1-10, Harford County Council Resolution Nos. 11-07 and 26-08; ECF 6-3 at 11-34, Harford County Resolution No. 06-09, as amended; ECF 6-3 at 16-35, Harford County Council Resolution Nos. 20-10; 11-11; 14-12; 14-13; and 11-14; ECF 6-5, 2014-2015 Statewide County Tax Rates. In sum, the County's tax bill for the Property is created by the County, based upon information provided by SDAT. ECF 6-2, ¶¶ 4-6, Sandless Affidavit.

The State has enacted numerous exemptions from property taxes, such as for cemeteries, the property of religious groups, housing for disabled veterans, and Nature Conservancy land. T.P. §§ 7-101, *et seq.* In addition, it has adopted a host of property tax credits and measures for property tax relief. T.P. §§ 9-101, *et seq.* Some of the credits are mandatory statewide, such as credits for the elderly and disabled, homeowners' tax credits, and homestead property tax credits. T.P. §§ 9-101, 9-104, 9-105. Others are optional and may be adopted by the governing body of a county or municipality. T.P. §§ 9-201, *et seq.* Similarly, Harford County has adopted a number of tax credits, such as agricultural preservation tax credits, Harford County Code § 123-43.3; tax credits for surviving spouses of veterans, *id.* at § 123-43.4; enterprise zone tax credits, *id.* at § 123-43.8; and credits for qualifying energy conservation devices, *id.* at § 123-44. Notably, plaintiff does not allege that he qualified for any State or County tax credits.

The Maryland General Assembly has provided remedies for the resolution of controversies involving property tax assessments. Where property has been assessed by a

_____

[3] The Property is not within an incorporated city or town. ECF 6-2, ¶ 7, Sandless Affidavit.

supervisor, any taxpayer may submit a written appeal to the supervisor as to a value or classification in a notice of assessment, due within 45 days from the date of the notice. T.P. § 14-502(a); *see also* T.P. § 14-503(a). The taxpayer may appeal the supervisor's final notice of assessment to the property tax assessment appeal board where the property is located, on or before 30 days from the date of the final notice. T.P. § 14-509(a). Informal hearings, during which an aggrieved party may submit any information that bears on the appeal, without regard to the technical rules of evidence, are provided under T.P. §§ 14-502, 14-509, 14-510.

The determination by the PTAAB may be appealed to the Maryland Tax Court within 30 days from the date of the final action of the SDAT. T.P. § 14-512. The Maryland Tax Court is required to hear and determine all appeals regarding an assessment for residential property within 90 days from the date the appeal is entered. T.P. § 14-512(f)(5)(i)(2). A taxpayer who remains dissatisfied may then seek judicial review of the Maryland Tax Court decision in the appropriate circuit court and, thereafter, to the Maryland Court of Special Appeals. T.P. §§ 14-513, 14-515.

As indicated, plaintiff did not appeal his property tax assessment to the Maryland Tax Court. Nor did he pursue his appeal from the ruling in Njau I.

Plaintiff's exhibits do not reflect that the County was responsible for assessing or establishing the valuation of his Property. Moreover, there is no evidence that the County failed to apply a uniform tax rate to the Property. Indeed, all of the evidence is to the contrary. Nor is there any factual allegation that, in valuing plaintiff's property, SDAT was motivated by racial animus.

The County argues that plaintiff's suit is barred by *res judicata*.  It posits that plaintiff has "expanded his arguments" (ECF 6-1 at 8), but is "arguing the same claim, grounded in the same set of facts. . . ."  *Id.*  Moreover, it maintains that plaintiff could have advanced earlier all the contentions he raises here.  *Id.*  And, it maintains that the County is in privity with the defendants who were previously sued.  *Id.*  According to the County, "the interest of the County in this action is identical to the interest of the State," so there is privity between the County and the State with regard to the calculation of real property taxes for the Property.  ECF 6-1 at 7.

Plaintiff contends that the doctrine of *res judica* is inapplicable, because "the case of Njau vs. Harford County has never been heard or decided by any other court . . . ."  ECF 7 at 1.  He maintains that he "is not adjudicating a challenge to the collection of a state tax but whether Harford County is using assessment and taxation to violate Plaintiffs [sic] Civil Rights."  *Id.*  He insists that "there is no uniform property tax assessment by showing taxation of the same property when owned by Mr. Njau as opposed to when it was owned by Mr. Angelucci."  *Id.* at 2.  In addition, Mr. Njau complains that there is no privity because the County "was not a party in the prior suit."  *Id.* at 1.

Sandlass, the Treasurer of Harford County and its collector of taxes, asserts in his Affidavit that the County "has no role in determining the assessed value of property within its boundaries, nor does it have any role in determining State-level tax credits."  ECF 6-2, ¶ 3.  Rather, he states:  "Assessed value of property and State tax credits are determined entirely by the State of Maryland, Department of Assessment and Taxation ('SDAT'), without any input or control by Harford County, Maryland."  *Id.*  Moreover, he explains that, in creating tax bills, "the County uses the annual levy provided by SDAT which lists the assessed value of each property,

as determined by SDAT . . . ." *Id.* ¶ 5. Thereafter, the "County applies its legislatively adopted [C]ounty property tax rate to the assessment determined by SDAT to calculate the County property tax due on each property." *Id.* ¶ 6.

As noted, Njau I was filed in the Circuit Court for Harford County. Mr. Njau was unsuccessful in Njau I, and a final judgment was rendered against him. Thereafter, In Njau II, filed in this Court, Mr. Njau filed an identical copy of the complaint he had filed in the State Court Action, and against the same defendants. *See* ECF 1 in ELH-12-2660. In my Memorandum of July 9, 2013 (ECF 15), 2013 WL 3491142 (D. Md. July 9, 2013), issued in Njau II, I determined that the suit was barred under the *Rooker-Feldman* doctrine or, alternatively, by *res judicata*.

As to Njau III, plaintiff has sued a different defendant and added several claims, but he asserts the same underlying factual allegations as were alleged by him in Njau I and Njau II. In its Motion, the County again relies, *inter alia*, on *res judicata*.

The Latin phrase "*res judicata*," translated literally into English as "a thing decided," *see* BLACK'S LAW DICTIONARY 1470 (rev. 4th ed. 1968), is the name of a legal doctrine that "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). *Res judicata*, also known as claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). The doctrine precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," and thereby reduces the "expense and vexation attending multiple lawsuits, conserves judicial resources," and avoids "inconsistent

decisions"). *Id.* at 153-54; *see also Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502, 503-04 (1989).

The doctrine of *res judicata* was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Laurel Sand & Gravel*, 519 F.3d at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also Gertz v. Anne Arundel Cnty.*, 339 Md. 261, 269, 661 A.2d 1157, *cert. denied*, 516 U.S. 990 (1995); *deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385 (1992); *Alvey v. Alvey*, 225 Md. 386, 390, 171 A.2d 92, 94 (1961). Of import here, *res judicata* also extends to claims that could have been asserted and litigated in the original suit. *FWB Bank v. Richman*, 354 Md. 472, 493, 731 A.2d 916, 927 (1999). When a court "'is on notice'" that the issues presented in a suit have been "'previously decided . . . , the court may dismiss the action *sua sponte*,'" *i.e.*, on its own initiative. *Arizona v. California*, 530 U.S. 392, 413 (2000) (citation omitted); *accord Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006).

The applicable law for purposes of claim preclusion in federal court is the law of the tribunal in which the prior judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *accord Exxon Mobil*, 544 U.S. at 293. The Fourth Circuit has said: "Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered." *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162; *accord Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 643 (4th Cir. 2011) (per curiam).

Maryland law governs the analysis as to Njau I. Under Maryland law, application of *res judicata* requires satisfaction of three conditions:

(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to

that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012); *accord Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013); *deLeon*, 328 Md. at 580, 616 A.2d 380.

Njau I and Njau II are obviously interrelated. But, federal law as to claim preclusion applies to Njau II. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *accord Allen v. McCurry*, 449 U.S. 90, 96 (1980). Much like Maryland law, the Fourth Circuit has said that *res judicata* applies when the following three elements are present: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." *Young-Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)).

The State Court Action and the First Federal Action each resulted in final and valid judgments.

I turn next to the matter of plaintiff's new legal theories. Both Maryland and federal courts apply the "transaction test" to determine identity of causes of action. *See In re Varat Enter., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996); *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 976 (4th Cir. 1984); *deLeon*, 328 Md. at 589-90; *Kent Cnty. Bd. of Educ. v. Bilbrough*, 309 Md. 487, 499, 525 A.2d 232, 238 (1987). In *Bilbrough*, 309 Md. at 498, 525 A.2d at 237-38, the Maryland Court of Appeals reviewed and relied on Section 24 of the RESTATEMENT (SECOND) OF JUDGMENTS ("RESTATEMENT"), which states:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*See also deLeon*, 328 Md. 569, 590, 616 A.2d at 390.

A cause of action is "identical" for purposes of *res judicata* if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett*, 800 F.2d at 1314. In deciding whether a factual grouping constitutes a "transaction," the RESTATEMENT gives "weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* § 24(2). Of significance here, "[a] plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of *res judicata*. *Onawola v. Johns Hopkins Univ.*, AMD-07-870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007) (citing *Harnett*, 800 F.2d at 1314).

Although plaintiff's factual allegations are virtually identical in all three of his cases, Njau III contains new legal theories, predicated on those same facts. In *Bilbrough*, 309 Md. at 495, 525 A.2d at 236, the Maryland Court of Appeals said: "[I]t seems to be settled here that a mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion." The court also observed, *id.* at 497, 525 A.2d at 237: "'The present trend is to see [a] claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories'. . . ." (Citation omitted).

What the Maryland Court of Appeals said in *Richman*, 354 Md. at 493, 731 A.2d at 927, is also relevant:

> When an earlier court has actually ruled on the matter sought to be litigated in a second court, the "same claim" analysis is usually straightforward. It is when . . . the earlier court has *not* directly ruled upon the matter that the analysis becomes more complex, for then the second court must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and *could* have been resolved in that court.

(Emphasis in *Richman*). Writing for the court, Judge Wilner continued: "It has long been established that judgment between the same parties or their privies upon the same cause of action is conclusive 'not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.'" (Citations omitted).

The cases discussed above make clear that plaintiff's inclusion of new legal theories does not enable him to avoid the bar of *res judicata*. Plaintiff could have asserted all of his new claims in Njau I.

Plaintiff also disputes that the County is in privity with the defendants who were sued in Njau I and Njau II. Parties are in privity for purposes of *res judicata* where they are "so identified in interest . . . that [they] represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). Moreover, "[p]rivity exists where a plaintiff attempts to relitigate the same claim by naming different governmental entities and employees as defendants." *Kayzakian v. Buck*, 865 F.2d 1258, at *2 (4th Cir. 1988) (per curiam) (citing *Mears v. Town of Oxford, Md.*, 762 F.2d 368, 371 n.3 (4th Cir.1985)).

In the prior suits, plaintiff sued the Harford County Tax Assessments and Taxation Department, and the Harford County Property Tax Assessment Appeals Board. It seems patently clear that Njau intended to sue agencies of the County, and was unaware that these entities are

actually State agencies.[4]  As the County puts it, Njau "apparently believed that tax assessments were under the authority and control of the County or at least that the State and the County were interchangeable entities."  ECF 6-1 at 7.  Moreover, he never differentiated between State property taxes and County property taxes in his earlier suits.  Rather, he simply complained about his "taxes," *i.e.*, his total real property taxes.  *Id.*

Both the County and the State utilize the same statutory scheme for purposes of collecting real property taxes.  As defendant points out, plaintiff's complaints concern the valuation of his Property, an action that is the responsibility of SDAT, not the County.  ECF 6-1 at 14.  In particular, plaintiff focuses on the amount of his assessment (ECF 1, ¶ 3); complains that his property taxes are excessive compared to the purchase price (*id.* ¶ 5); and that other properties in the area have lower tax assessments even though they are larger.  *Id.* ¶ 6.  But, the County's only "role in determining the real property taxes for a given property is limited to applying the County real property tax rate to an assessment developed and provided" by the SDAT, and to then "prepare[] the bill showing both the State property tax and the County property tax."  ECF 6-1 at 19.  It did not determine plaintiff's underlying property valuation, on which the County's property tax was calculated.

Clearly, Harford County shares the interests of the two defendants previously sued by plaintiff.  *Id.*  I am satisfied that the privity requirement is met.

## V.    Conclusion

In my view, all of the criteria for application of *res judicata* have been met here.  The State Court Action, the First Federal Action, and the Second Federal Action are factually

---

[4] In Njau II, the Supervisor of Assessments for Harford County, part of SDAT, moved to dismiss, apparently in lieu of the misnamed Harford County Tax Assessments & Taxation Department.  *See* ECF 5; ECF 5-1 in Njau II, ELH-12-2660.

identical.  Although Njau III contains new causes of action, all of these claims could have been raised in the earlier lawsuits.  In Njau I the State court specifically addressed the merits of plaintiff's claim of tax discrimination.  Valid final judgments were entered in Njau I and Njau II, and plaintiff did not pursue an appeal to exercise his right to challenge the rulings in Njau I or Njau II.

In Njau I and Njau II, plaintiff sued the Harford County Property Tax Assessment Appeals Board and the Harford County Tax Assessment & Taxation Department.  In Njau III, plaintiff sued Harford County.  Given the State's tax scheme, the entities previously sued are indistinguishable from the County for purposes of privity.  Plaintiff cannot circumvent the rulings in Njau I and Njau II by naming a new but related defendant here.

An Order follows.


Date: November 19, 2015                    _____/s/_____
                                           Ellen L. Hollander
                                           United States District Judge